```
 1            IN THE UNITED STATES DISTRICT COURT

 2                SOUTHERN DISTRICT OF FLORIDA

 3     A4A RESEAU, INC., and        )

 4     MARC PARENT,                 )

 5            Plaintiffs,           )

 6       vs.                        )  No. 15-cv-20245 MGC

 7     FLAVA WORKS, INC., and       )

 8     PHILLIP BLEICHER,            )

 9            Defendants.           )

10

11            The deposition of BILLY MOLDEN, called

12     for examination pursuant to the Rules of Civil

13     Procedure for the United States District Courts

14     pertaining to the taking of depositions, taken

15     before Analisa McDermott, a notary public within

16     and for the County of Cook and State of Illinois,

17     at 200 North LaSalle Street, Suite 2900, Chicago,

18     Illinois, on the 14th day of July, 2015, at the

19     hour of 10:13 o'clock a.m.

20

21

22

23     Reported By:  Analisa McDermott, CSR, RPR, CRR

24     License No.:  084-003620
```

```
 1    APPEARANCES:

 2

 3             LEAVENS, STRAND & GLOVER, LLC

 4             BY:   MR. TRAVIS LIFE

 5             203 North LaSalle Street, Suite 2550

 6             Chicago, Illinois  60601

 7             (312) 488-4163

 8                  on behalf of the Plaintiffs;

 9

10

11             SHAMBEE LAW OFFICE, LTD.

12             BY:   MS. JUNEITHA SHAMBEE

13             P.O. Box 91

14             Evanston, Illinois  60204-0091

15             (773) 741-3602

16                  on behalf of the Defendants.

17

18

19

20

21

22

23

24
```



1                          I N D E X

2    WITNESS                          EXAMINATION

3    BILLY MOLDEN

4        By Mr. Life                      4

5        By Ms. Shambee                  33

6        By Mr. Life (Further)           70

7

8

9

10                    E X H I B I T S

11   NUMBER                          MARKED FOR ID

12   Molden Deposition Exhibit

13       Exhibit A                       14

14       Exhibit B                       26

15       Exhibit C                       28

16   Defense Deposition Exhibit

17       Exhibit No. 1                   49

18       Exhibit No. 2                   61

19       Exhibit No. 3                   65

20

21

22

23

24



1      MR. LIFE:  Let the record reflect that this is

2   the deposition of Billy Molden taken pursuant to

3   subpoena and the applicable Federal Rules of Civil

4   Procedure and local rules of the Southern District

5   of Florida.

6           If you would, please swear in the witness.

7                    (Witness sworn.)

8      MR. LIFE:  Mr. Molden, I introduced myself

9   earlier.  My name is Travis Life.  I represent

10  A4A Reseau, Incorporated, and Marc Parent in a

11  litigation that is pending in Florida.  We've asked

12  you here for your deposition regarding your job

13  and your duties in regards to your role within that

14  litigation.

15                    BILLY MOLDEN,

16  called as a witness herein, having been first duly

17  sworn, was examined and testified as follows:

18                    EXAMINATION

19  BY MR. LIFE:

20      Q.   Okay.  Have you ever taken a deposition

21  before?

22      A.   Uh-huh.

23      Q.   Is that a yes?

24      A.   Yes, sir.

1          Q.    Okay.  How many previous depositions have

2     you --

3          A.    No, just one.

4          Q.    Just one.  And what was the circumstances

5     in which you took a deposition prior?

6          A.    I don't remember.

7          Q.    Okay.  Was it in relationship to your job

8     as a process server?

9          A.    No.

10         Q.    Was it involved in a civil suit?

11         A.    No.

12         Q.    Okay.  Do you recall what the -- were

13    you --

14         A.    Well, you know it had nothing to do with

15    this case --

16         Q.    Okay.

17         A.    -- nothing.

18         Q.    Right.  Do you recall any of the parties

19    that were involved in that previous --

20         A.    It wasn't -- no.

21         Q.    Okay.  Well, just to move things along, if

22    you don't mind, if we lay some ground rules, we can

23    push through this even faster, if that's acceptable

24    to you.

1     A.    Uh-huh.

2     Q.    All right.  First, I would ask that

3   you allow me to complete the question.  After I

4   complete the question, I will reciprocate that and

5   have you complete the answer.

6         Sometimes we'll get in a conversation and

7   you'll know the answer before I'm even done with

8   the question.  Just allow me to finish the question

9   and I'll allow you to finish the answer, if that's

10  okay, sir.

11    A.    Uh-huh.

12    Q.    In addition, we have a court reporter

13  here who is typing down all of your answers so I

14  would ask that your answers be verbal and audible.

15  And by that, I mean shaking of the head or nodding

16  of the head is very difficult to transcribe, and

17  when we're sitting down reading this later, we'll

18  need to understand exactly what you're saying.

19         And in addition, I'd like it to be

20  audible, meaning that if the answer is yes or no,

21  if you could please state yes or no rather than

22  uh-huhs or uh-uhs --

23    A.    No, I know.  Well, I go to court in the

24  Daley Center.

1        Q.   All right.  And so you're familiar with

2    that?

3        A.   Yeah.

4        Q.   Okay.  Great.  And then if you have any

5    need to take a break, just let us know, and we can

6    take a break.  The only caveat I would ask is if I

7    ask a question prior to the break that you answer

8    that question before we proceed for the break.  Is

9    that agreeable, sir?

10       A.   Yeah.

11       Q.   Okay.  Can you please state your name for

12   the court reporter?

13       A.   Billy Molden.

14       Q.   Okay.  And can you spell your last name

15   for us?

16       A.   M-o-l-d-e-n.

17       Q.   And what's your address, sir?

18       A.   6351 West Montrose.

19       Q.   And that's Chicago?

20       A.   Yeah.

21       Q.   All right.  Do you know what the ZIP code

22   is there?

23       A.   606 -- well, that's the office address.

24   We always use the office.



1     Q.   Sure, that's fine.

2     A.   60651.

3     Q.   All right.  And what's your date of birth,

4  Mr. Molden?

5     A.   June 16th, '63.

6     Q.   And where were you born?

7     A.   Arkansas.

8     Q.   And what was your highest level of

9  education?

10    A.   Ninth.

11    Q.   Ninth grade?

12    A.   Yeah.

13    Q.   And are you currently employed?

14    A.   Lakeside Investigation.

15    Q.   All right.  And do you have a title at

16 Lakeside Investigation?

17    A.   Process server, investigator or whatever

18 they call us.

19    Q.   And what are your duties as a process

20 server, investigator?

21    A.   Look for people and -- on their job or

22 home and make sure I identify the person or the

23 person identify their self to me, and then if they

24 do, then I serve them.  I just give it to them by



```
1    their hand.  But if they refuse to take it, I can't
2    fight with these people.
3        Q.   All right.  Now, how long have you
4    been a process server, investigator at Lakeside
5    Investigation?
6        A.   Since 2000.
7        Q.   So for the past 15 years?
8        A.   Yeah.
9        Q.   Prior to Lakeside Investigation, did
10   you have any other occupation as a process server
11   or investigator?
12       A.   Well, I used to be security.
13       Q.   Okay.
14       A.   But that's over with.
15       Q.   Okay.  And as a process server,
16   investigator at Lakeside Investigation, do you have
17   any sort of licensure or certificate?
18       A.   From the State, yeah.
19       Q.   Okay.  And what's the title of that
20   certificate?
21       A.   Now it's called a PER card -- PER card.
22       Q.   A PER card?
23       A.   Yeah, that's what they call it.
24       Q.   Okay.
```



1        A.    A blue card, Permanent Employee

2   Registration.

3        Q.    And are all process servers, investigators

4   required to have this PER card, blue card?

5        A.    Really the state of Illinois requires you

6   to be Court-appointed by the Court if you -- like,

7   you being an attorney, if you hire us, you could

8   fill out the Court-appointed -- I'm sure you seen

9   them papers.  You could be appointed by the Court.

10       Q.    Is there any licensure requirement by the

11  state of Illinois to be a process server?

12       A.    No.  I was told you have to be appointed

13  by the Court, but you can work as a process server

14  with the blue Permanent Employee Registration card.

15       Q.    Okay.

16       A.    You have -- that's if you working for

17  an agency.  But, like, if I'm working for you as

18  a process server or a paralegal -- well, if I'm

19  working for U.S. Paralegal, I can do it as long as

20  you got me appointed by the Court.

21       Q.    Sure.  Now, I'm going to ask you some --

22  well, strike that.

23            The case that we're addressing here today

24  is A4A Reseau, Incorporated, and Marc Parent versus

1   Flava works, Incorporated, and Phillip Bleicher.

2   Are you familiar with any of those companies or

3   individuals?

4        A.   Phillip.

5        Q.   You know Phillip?

6        A.   I don't know him.  I -- I just do my

7   job, what I'm supposed to do.  If I'm told to serve

8   someone, I do what I supposed to do.

9        Q.   Okay.  You're not a party to this

10  particular action, are you?

11       A.   No.

12       Q.   And we talked about your previous

13  deposition.  Have you testified in court, sir?

14       A.   Yeah.

15       Q.   And how often -- excuse me.  Strike that.

16            How many times have you testified in

17  court?

18       A.   Several.

19       Q.   More than --

20       A.   well, I didn't really have to testify

21  in court at the Daley Center.  I just showed

22  my presence and talked to the attorney who I

23  worked for, like you or something, and the judge

24  will answer and then they'll say go home.



```
 1        Q.   Okay.  So you've been present to testify,
 2   but you've never actually had to testify; is that
 3   correct?
 4        A.   I have testified before --
 5        Q.   Okay.  What was the circumstances --
 6        A.   -- but the judge told the person --
 7   the other person thought -- this what happened.
 8   The other person thought that the police officer
 9   can tell me go home.  But you're talking about
10   something don't concern this case.
11        Q.   Sure.  Well, I'm trying to get a
12   background -- just basic background from you.
13   That's why I'm asking you.
14        A.   Well, the person thought a policeman can
15   tell me to go home because I was someone knocking
16   at their door and they didn't know me.  You know,
17   people nowadays paranoid and scared, especially of
18   other colored people so --
19        Q.   So other than this one instance when you
20   testified in court, have you ever testified at any
21   other times in court?
22        A.   I have testified before, but not that
23   many.
24        Q.   Okay.  In the times that you have
```



1  testified in court, were they all related to your
2  duties as a process server?
3      A.   Oh, you're saying testifying?  I only
4  went to court a couple of times, and that's it.
5  It was about four.
6      Q.   Okay.  So four times that you've gone to
7  court?
8      A.   Yeah.
9      Q.   Okay.  And out of those four times, I
10 take it, you've never testified -- never actually
11 testified?
12     A.   I mean, I have -- if the judge ask
13 me something.  But a couple of them was landlord
14 related so I don't see what it got to do with
15 this.
16     Q.   I'm just getting a background, trying to
17 understand --
18     A.   A landlord -- landlord, you know,
19 eviction.
20     Q.   Yeah.
21     A.   That's what that was about.
22     Q.   Okay.  Now, you understand that for the
23 deposition and for your testimony in court and
24 from your previous depositions that you have sworn



1    under oath for your testimony here today; is that

2    correct?

3        A.   Uh-huh.

4        Q.   And that's a yes?

5        A.   Yes, sir.

6        Q.   Okay.  And you understand that your

7    testimony here today for the deposition has the

8    same effect as your testimony in court; is that

9    correct?

10       A.   Yes, sir.

11       Q.   Is there any reason that you are unable to

12   testify today for this deposition?

13       A.   I didn't say I was unable.  I'm here to

14   answer whatever questions you want to ask.

15       MR. LIFE:  Okay.  Would you mark this as Group

16   Exhibit A.

17                         (Whereupon, Molden Deposition

18                          Exhibit Letter A was marked

19                          for identification.)

20   BY MR. LIFE:

21       Q.   Okay.  Now, Mr. Molden, I'm handing

22   you two documents the court reporter has marked

23   as Exhibit A, if you could take a moment to look

24   through those documents, please.

1     A.   Okay.

2     Q.   All right.  Do you recognize these two

3 documents?

4     A.   I recognize the address.

5     Q.   Okay.  And which address are you referring

6 to?

7     A.   933 West Irving Park, Apartment C.  And

8 I took pictures and sent it to you all.

9     Q.   Okay.  And this -- let's look at the -- if

10 I could see the top document that you have there,

11 sir, we'll refer to that one first.  Let's look at

12 this one with the sticker.

13        So just referring to the document with the

14 sticker here, is this your signature at the bottom

15 right, sir?

16     A.   At the bottom right, yeah.

17     Q.   And is that your process server number,

18 129-027813?

19     A.   Yes, sir.

20     Q.   Okay.  Did you fill out this form or have

21 someone fill it out for you?

22     A.   Supervisor.

23     Q.   And the supervisor -- did they fill it out

24 in your presence?

1      A.   Yes.

2      Q.   And then did you sign it in front of your

3   supervisor?

4      A.   Yes.

5      Q.   And at this top document, it says on the

6   top line, received by DJ Process Service, Inc.,

7   on the 30th day of January, 2015, at 10:43 a.m.,

8   to be served on Flava Works, Incorporated, 933 West

9   Irving Park Road, Apartment C, Chicago, Illinois

10   60613-3074.  Do you see that, sir?

11      A.   Right here?

12      Q.   Yes, at the very top.

13      A.   Yeah.

14      Q.   All right.  And all of the information

15   that has been filled in -- is that information

16   correct?

17      A.   Yeah.

18      Q.   And it looks like there was perhaps a

19   slight error on the year for February 4, 2014;

20   somebody forgot to flip over to 2015?  Is that

21   correct, sir?

22      A.   Oh, that's on here.

23      Q.   No, the other --

24      A.   One say '14 and one say '15.



1        Q.   Correct.  The one that says '14, that was

2    actually done in February of 2015; is that correct?

3        A.   Yeah, right.

4        Q.   Other than that, is there anything else in

5    that particular document that is incorrect?

6        A.   I see he got right here that the person

7    refused to give his name.

8        Q.   Correct.

9        A.   Because first when I rung the bell,

10   they thought I was from Fed Ex or UPS, and I had an

11   envelope, like it's a package, and when I say I had

12   papers from the court, they accepted them.  And I

13   saw all the information on the box --

14       Q.   Right.

15       A.   -- and it say we do accept packages or

16   whatever.  When I shown my badge, then that was

17   where he was to give a name and he refused.

18       Q.   So after the individual learned that you

19   were a process server, then they refused to give

20   you any information?

21       A.   Yeah.

22       Q.   Okay.  Looking at this document, all of

23   the items that are written in -- are all of those

24   items accurate and correct?



1      A.   Yes, sir.

2      Q.   Okay. So let's look at the other

3   document, same exhibit, and I'll read the top line

4   for you. It says, received by DJ Process Service,

5   Inc., on the 30th day of January, 2015, at 10:43

6   a.m., to be served on Phillip Bleicher, 933 West

7   Irving Park Road, Apartment C, Chicago, Illinois

8   60613-3074. Do you see that, sir?

9      A.   Yeah.

10     Q.   And did your supervisor fill out this

11  document as well?

12     A.   Yes, sir.

13     Q.   Okay. And was this filled out in your

14  presence?

15     A.   Yes, sir.

16     Q.   And is that your signature at the bottom

17  right?

18     A.   Yes, sir.

19     Q.   Okay. And all of the information

20  that's filled out on this document, is all this

21  information accurate and correct?

22     A.   Yes, sir.

23     Q.   All right. On February 4th in 2015 at

24  approximately 3:50 p.m., did you serve a complaint



1  and a summons to the defendant, Flava Works,

2  Incorporated?

3      A.   Yes, sir.

4      Q.   And on February 4th, 2015 at approximately

5  3:50 p.m., did you serve a complaint and summons to

6  Defendant Phillip Bleicher?

7      A.   Yes, sir.  Yes.

8      Q.   Okay.  Did you physically hand those

9  documents over?

10     A.   Yes, sir.

11     Q.   Can you describe exactly what took place

12 in the -- from your memory as to the events of

13 that -- on February 4th, 2015 per your efforts to

14 serve the complaint and summons?

15     A.   I did what I supposed to did, rung the

16 bell.  They buzzed me in and --

17     Q.   Well, is this a building that you had

18 to --

19     A.   They buzzed me in.

20     Q.   Right.  You weren't able just to enter

21 the --

22     A.   No.

23     Q.   -- door?  You had to be buzzed in; is that

24 correct?



1     A.    Yeah.

2     Q.    And after you were buzzed in, what

3    happened next?

4     A.    I knocked on the door and the guy came

5    to the door -- a white guy and I asked for Phillip.

6    And if I'm thinking of the gentleman right, he said

7    Phillip wasn't there, but he himself -- whatever it

8    is -- he thought I was from, like I said, Fed Ex or

9    United Parcel.

10    Q.    Okay.  So this gentleman who answered the

11   door offered to accept the items when he thought

12   that you were from Fed Ex or USPS?

13    A.    Yeah.  When he see that I wasn't, that I

14   was from the court, then he want to get ignorant,

15   refuse service.

16          And then I did receive a phone call about

17   a month later that they going to do everything in

18   their power to try to make it where I can't serve

19   papers anymore and you shouldn't have served that

20   paper.

21    Q.    Well, so let me stop you there.  You

22   received a phone call approximately sometime in

23   March of 2015?

24    A.    Yeah.



1    Q.    And who did you receive that phone call

2    from?

3         A.    I think he said his name was Phillip.

4         Q.    Was it the Phillip Bleicher that you had

5    the summons for?

6         A.    Yeah.

7         Q.    Okay.  And what was the context of that

8    conversation that you had via the phone call?

9         A.    He going to do everything in his power to

10   report why I can't work again.

11        Q.    And where did you receive this phone call?

12   Where were you when you received that call?

13        A.    Oh, I was in Illinois, in Chicago.

14        Q.    Okay.  Did you receive your call at work

15   or on your cell phone?

16        A.    I was on my cell phone.

17        Q.    Okay.  Do you recall when in March that

18   you received this call?

19        A.    No.  I have too much other stuff going on,

20   people dying in the family and -- so I have too

21   much on my plate to keep up with stuff like that.

22        Q.    Did you report this call to anyone at your

23   employer?

24        A.    Yeah.



1        Q.    And who did you --

2        A.    Normally I would report threatening --

3    threatening phone calls to the police department.

4    I do, but I didn't.

5        Q.    Who at your employer did you report this

6    call to?

7        A.    To Tom.

8        Q.    Tom?  And what's Tom's last name?

9        A.    Dolan.

10        Q.    Can you spell Dolan?

11        A.    D-o-l-a-n.

12        Q.    Okay.  Now, back to February 4th, 2015,

13    how many times did you visit the property to serve

14    the papers?

15        A.    You know what, one time --

16        Q.    Okay.  And --

17        A.    -- one or two times I went there.  I

18    think you all sent me one or two times.  But I know

19    the first time I went -- once you give the paper to

20    them, what can I -- what I supposed to do?

21        Q.    Right.

22        A.    What you all want me to do?  I know

23    Cook County does want you to give it to them.

24    If they don't want to take it, you can drop it



1   by their feet, I know, so --

2        Q.   So you had said that the property was

3   a type of property that you had to be buzzed in

4   to enter?

5        A.   Uh-huh.

6        Q.   Can you describe the building for me, if

7   you recall?

8        A.   Like, a -- not a real tall building,

9   medium, like -- it's kind of hard to explain.  Buzz

10  the bell and walk up the steps and then knock on

11  the door.

12       Q.   Okay.  Was it, like, a two-floor,

13  three-floor building?

14       A.   No, just -- you buzz the bell and then

15  walk up the stairs.  I took pictures.

16       Q.   Okay.  And you mentioned that there was

17  an individual that had answered the door and this

18  individual was a Caucasian man?

19       A.   Uh-huh.

20       Q.   Was he older or younger?

21       A.   Older.

22       Q.   Was he approximately my age, 30's, 40's,

23  or was he older?

24       A.   I think 50 -- between 50's and 60.



1      Q.   Okay.  What color was his hair?

2      A.   I don't remember all that.

3      Q.   Okay.  Was he tall or short?

4      A.   Kind of tall, about your height.

5      Q.   Do you recall what he was wearing?

6      A.   Come on now.  I got too much on my --

7   I been in the hospital and everything since then.

8      Q.   Sure.  So you don't recall what he was

9   wearing.  Do you recall when he answered the door

10  if he was doing anything?

11     A.   No.  I just know they don't like

12  investigators.

13     Q.   Okay.  Did the -- and you informed

14  this individual who answered the door that you

15  were serving --

16     A.   I showed my star.

17     Q.   And did you inform him about the summons

18  and the complaint?

19     A.   Yes, sir.  It was funny.  I can remember

20  that good.  He slammed the door.

21     Q.   He slammed the door on you?

22     A.   Yes, sir.

23     Q.   Did he slam the door on you after he got

24  the summons and the complaint?



1        A.   I pulled out my badge and I walked up the
2    stairs and told him I had a summons and complaint.
3    He thought it was a package first and did this --
4        Q.   And did he grab the summons and complaint
5    when he reached out for it?
6        A.   Yeah, he grabbed my hand and then slammed
7    the door.  It was funny.
8        Q.   Did you --
9        A.   And then he -- oh, he had tried to give it
10   back.
11       Q.   He had tried to give the summons back to
12   you?
13       A.   And I said, "sir, have a nice day" and
14   walked away.  It was funny at first.
15       Q.   But he told you that he could accept a
16   parcel --
17       A.   Yeah.
18       Q.   -- for Phillip Bleicher or for Flava
19   Works, right?
20       A.   Exactly.  And I told him, and I know
21   Illinois, and once you take it, you can't take it
22   back.
23       MR. LIFE:  All right.  Would you mark this as
24   Exhibit B, please.

 1                      (Whereupon, Molden Deposition

 2                      Exhibit Letter B was marked

 3                      for identification.)

 4  BY MR. LIFE:

 5      Q.   Mr. Molden, I'm going to hand you what

 6  the court reporter has marked as Exhibit B.  Do you

 7  recognize this?

 8      A.   This is the next time I saw him.  Yeah,

 9  yeah, so you can see he live there.

10      Q.   So can you describe for the court reporter

11  what Exhibit B is?

12      A.   I just see -- oh, a mailbox.  I did take a

13  copy.

14      Q.   Is this a photograph that you took?

15      A.   Yeah --

16      Q.   Okay.  Did you take this --

17      A.   -- right.

18      Q.   Did you take this when you were serving

19  the summons and the complaint?

20      A.   Yes, sir.

21      Q.   Can you read the top three lines of the

22  individuals at that address or companies at that

23  address?

24      A.   I see the 933 West Irving Park.



1      Q.   Yep.  What's the first company there?

2      A.   What's that?  F Works.

3      Q.   Is that Flava Works?

4      A.   Yeah.

5      Q.   And then the third line on the --

6      A.   -- FW -- and Phillip, Richard --

7      Q.   Phillip Bleicher?

8      A.   Yeah.

9      Q.   Okay.  Was Flava Works the company

10   that you were hired to serve the summons and

11   the complaint to?

12      A.   Yeah, it's the same.

13      Q.   And was Phillip Bleicher the individual

14   that you were hired to serve the summons and the

15   complaint to?

16      A.   Yes, sir.

17      Q.   All right.  Why did you take this

18   photograph?

19      A.   To have evidence that I was -- so

20   that the attorney can know that I did go to the

21   location.  And I'm basically saying, look, he

22   do live here.

23      Q.   So this was a means for you to show that

24   this is where the individual and the company was



1    actually located?

2        A.   Yes.  Oh, I was told the company is

3    active, the guy who accepted it.

4        MR. LIFE:  Okay.  Mark this as Group Exhibit C,

5    please.

6                         (Whereupon, Molden Deposition

7                          Group Exhibit Letter C was

8                          marked for identification.)

9    BY MR. LIFE:

10       Q.   Okay.  Mr. Molden, I'm going to hand you

11   what's been presented in this case as a couple of

12   screenshots, if you could take a look at those for

13   me, please.

14       A.   Oh, that's me.

15       Q.   Do you recognize the individual in those

16   two screenshots?

17       A.   Is it me?  It look like me.

18       Q.   Okay.  Can you tell in reviewing those two

19   screenshots if those are images of the property

20   that you were on when you serviced the summons and

21   the complaint on February 4th of 2015?

22       A.   Yes, sir.

23       Q.   Can you describe what you are doing in

24   these two screenshots if you're able?



1    MS. SHAMBEE: Objection.

2    THE WITNESS: I'd say it look like --

3    MS. SHAMBEE: Objection.

4    THE WITNESS: I was serving papers.

5  BY MR. LIFE:

6    Q. All right. Can you describe looking

7  at those screenshots what's in your hand if you're

8  able?

9    MS. SHAMBEE: Objection, vague.

10    THE WITNESS: It look like going out the door.

11  BY MR. LIFE:

12    Q. Okay. Is there anything in your hand in

13  those images if you can see?

14    A. Oh, my envelopes. Remember I said I came

15  up the steps with some envelopes?

16    Q. Yes, sir.

17    A. I mean, yes. And I had the subpoenas that

18  I was supposed to give Phillip, and I gave them to

19  the guy.

20    Q. Yes.

21    A. So using envelopes is a way of making

22  people think I'm from the messenger service or you

23  name it.

24    Q. Okay. So what you're holding in your

1   hands are envelopes?

2       A.   Yeah.

3       Q.   Are the documents that you're holding

4   in your hands -- are those the summons or the

5   complaint?

6       A.   No, no.  I see why you all would question

7   that.  No, sir.  I had --

8       Q.   Okay.

9       A.   No, it's not.

10      Q.   Now, I want to direct your attention --

11  I'll give these documents back -- at the very

12  top -- do you see the very top there, sir?

13      A.   Yeah.

14      Q.   It has a line -- a time and date stamp

15  up on top of those screenshots.  Do you see that?

16  Do you see those two --

17      A.   Yeah.  It's the morning time.

18      Q.   Okay.  It appears to say 2015-02-04 --

19      A.   Okay.

20      Q.   -- T15:11:32.

21      A.   Okay.

22      Q.   Do you see that?

23      A.   Yes.

24      Q.   I presume that the 1511 is military time,

```
 1   sir.
 2        A.   Right.
 3        Q.   And if that's correct, that's
 4   approximately 3:11; is that your understanding --
 5   p.m.; is that correct, sir?
 6        A.   Wait.  You said p.m. --
 7        Q.   Yes, sir.
 8        A.   -- or a.m.?
 9        Q.   In the p.m.?
10        A.   That's not p.m.  It was daybreak the
11   last -- when I went.  It wasn't night.
12        Q.   Right.
13        A.   I did not go at night.
14        Q.   Okay.  Well, would it have been day at
15   3:50 p.m.?
16        A.   Yeah.
17        Q.   Okay.  Would it have been daylight at
18   3:11 p.m.?
19        A.   Yeah.
20        Q.   Okay.  The reason why I'm asking you is
21   that these screenshots have a time that's about
22   30 some odd minutes earlier than your affidavit,
23   and the reason why I'm asking you is to find out if
24   you re-returned to that site later or if there --
```

1   perhaps there's some error in the time stamp.

2   I don't know. I'm just trying to figure out why

3   there's a difference.

4       A.   I don't know. I know you is right. I

5   might have -- let me see -- went earlier, if I'm

6   thinking, and then went back, like, around that

7   time, 3:00. So yeah, you're right. It must have

8   been an error. I did return back. We can go many

9   times as we want to.

10       Q.   Right.

11       A.   It's --

12       MS. SHAMBEE: I'm going to object to that

13   question.

14   BY MR. LIFE:

15       Q.   Were you finished?

16       A.   Uh-huh.

17       Q.   Okay. We talked about the phone call

18   that you received a month after the process --

19   after you served the summons?

20       A.   Uh-huh.

21       Q.   Okay. Did you receive any additional

22   contact from either Flava Works or any other

23   representatives?

24       A.   No.

1  as to the accuracy of the date stamp on these

2  videos?

3      A.  No.

4      MR. LIFE:  No further questions.  I'm done.

5  Thank you.

6      MS. SHAMBEE:  No further questions.

7      MR. LIFE:  Okay.  Mr. Molden, you have the

8  opportunity to review the transcript for your

9  signature.  Now, when you review the transcript,

10  you are only reviewing for spelling or accuracy

11  for pronouns or names.  You're not reviewing the

12  substantiveness of the testimony.

13          So with that, sir, you have the option to

14  either review it and then sign for the transcript

15  or you can waive the transcript signature at this

16  time.

17      THE WITNESS:  I can waive it.

18      MR. LIFE:  Okay.  Let the record reflect

19  that the witness has waived signature for the

20  transcript.

21                          (FURTHER DEPONENT SAITH

22                          NAUGHT.)

23                          (Whereupon, the deposition

24                          concluded at 11:44 a.m.)

```
 1   STATE OF ILLINOIS  )

 2                      )   SS:

 3   COUNTY OF C O O K  )

 4           I, Analisa McDermott, a notary public

 5   within and for the County of Cook and State of

 6   Illinois, do hereby certify that heretofore,

 7   to-wit, on July 14, 2015, BILLY MOLDEN, personally

 8   appeared before me at 200 North LaSalle Street,

 9   Suite 2900, Chicago, Illinois, in a cause now

10   pending and undetermined in the United States

11   District Court, Southern District of Florida,

12   wherein A4A RESEAU, INC., and MARC PARENT are

13   the Plaintiffs, and FLAVA WORKS, INC., and PHILLIP

14   BLEICHER are the Defendants.

15           I further certify that the said witness

16   was first duly sworn to testify the truth, the

17   whole truth and nothing but the truth in the

18   cause aforesaid; that the testimony then given

19   by said witness was reported stenographically

20   by me in the presence of the said witness and

21   afterwards reduced to typewriting by Computer-Aided

22   Transcription; and that the foregoing is a true

23   and correct transcript of the testimony so given

24   by said witness as aforesaid.
```

1           I further certify that the signature

2    to the foregoing deposition was waived by the

3    witness.

4           I further certify that the taking of

5    this deposition was pursuant to Notice and that

6    there were present at the deposition the attorneys

7    hereinbefore mentioned.

8           I further certify that I am not counsel

9    for nor in any way related to the parties to this

10   suit, nor am I in any way interested in the outcome

11   thereof.

12          IN TESTIMONY WHEREOF:   I have hereunto set

13   my hand and affixed my notarial seal this 17th day

14   of July, 2015.

15

16

17

18              _analisa McDermott_

19

20          NOTARY PUBLIC, COOK COUNTY, ILLINOIS

21

22

23

24



