**EXHIBIT "I"**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
CIVIL LAW DIVISION

| | | |
|---|---|---|
| Flava Works, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | Case No: |
| | ) | |
| vs. | ) | Amount Claimed: Estimated |
| | ) | above $30,000 |
| | ) | |
| Marvin Jones, d/b/a BC Productions, | ) | Return Date: |
| d/b/a/ BlatinoPro.com, d/b/a | ) | |
| ChocolateCreamFactory.com. | ) | |
| | ) | |
| Defendant. | ) | |

## VERIFIED COMPLAINT AT LAW

NOW COMES the Plaintiff, Flava Works, Inc. (hereinafter "Flava Works"), by and through its attorney, Jesse Lanshe, and for its Verified Complaint at Law against the Defendant, Marvin Jones (hereinafter "Jones"), d/b/a BC Productions, d/b/a/ BlatinoPro.com, d/b/a ChocolateCreamFactory.com (hereinafter collectively "BC Productions" unless otherwise specified), states and alleges as follows:

### General Allegations Common to All Counts

1. At all times relevant hereto, Plaintiff, Flava Works, was and is a corporation, incorporated under the laws of the State of Florida, doing business in the State of Illinois by marketing, distributing and/or selling non-obscene adult-themed erotic material in the State of Illinois.

2. At all times relevant hereto, Defendant, Marvin Jones (hereinafter "Jones"), was and is an individual residing in the state of New York.



3. At all times relevant hereto, Marvin Jones, d/b/a BC Productions, d/b/a Blatinopro.com, d/b/a Chocolatecreamfactory.com was and is doing business in the State of Illinois by marketing, distributing, selling and/or shipping non-obscene adult-themed erotic material in/to the State of Illinois.

4. At all times relevant hereto, Larry Williams (hereinafter "Williams") was and is an individual residing in the State of New York acting as a business associate to Jones in connection with BC Productions.

5. At all times relevant hereto, William Ratliff, Jr., a model working under the stage name "Elmo Jackson" (hereinafter "Jackson"), was an individual residing in the State of Tennessee, and who is now currently incarcerated in the State of Georgia.

6. On January 21, 2008, Jackson signed a Model Contract and Release with Flava Works (see Exhibit A attached hereto, Model Contract and Release), the terms of which prohibited Jackson from performing in a modeling capacity with any company other than Flava Works, and in which Flava Works retained the exclusive right to the use of Jackson's name, image and likeness, through the duration of the contract until January 20, 2009.[1]

7. On April 17, 2008, a press release was published on Xbiz.com (the website of an adult entertainment industry trade publication) in which Jackson was listed as an "exclusive model[]" of Flava Works. See Exhibit B attached hereto, "Breion Diamond Goes to France."

8. BC Productions had constructive knowledge that Jackson was signed to an exclusive modeling contract of an undisclosed duration with Flava Works due to the publication of the above referenced press release on a website that is typically viewed by persons in the adult entertainment industry.

---

[1] Some of the attached Exhibits may contain images objectionable to the average viewer. In these instances, steps have been taken to black out any possibly offensive imagery.

9. It has been Flava Works' business practice to alert the general public, including its competitors, as to which of their models are under exclusive contract by various means, including, but not limited to, membership on Flava Works' VIP List (hereinafter "the List"); such membership includes, among other things, the recipient receiving copies of newly released DVDs and magazines, or "screeners," released by Flava Works, as well as model cards depicting the name, image and likeness of Flava Works' exclusively signed models, referencing their exclusivity status.

10. In the spring of 2008, Williams registered himself and/or BC Productions to become a member of the List, listing the mailing address to which information was/is to be shipped, in pertinent part, as: BC Productions, c/o Larry Williams.

11. In the summer of 2008, Flava Works shipped to BC Productions, by virtue of membership in the List, copies of two (2) DVDs and two (2) magazines produced by Flava Works containing depictions of Jackson's performances as an exclusive Flava Works model; also included in this shipment was an exclusive model card (see Exhibit C attached hereto, Elmo Jackson Exclusive Modeling Card) containing a depiction of Jackson's name, image and likeness, indicating to recipients that Jackson was under exclusive contract with Flava Works.

12. Because of the screeners and the exclusive model card that were sent to BC Productions in the summer of 2008, BC Productions, as well as Jones and Williams, had actual knowledge that Jackson was signed to an exclusive modeling contract of an undisclosed duration with Flava Works.

13. On September 30, 2008, after negotiating a raise in pay, Jackson entered into a new twelve (12) month exclusive modeling contract with Flava Works (hereinafter "the Jackson/Flava Works contract") (see Exhibit D attached hereto, Flava Works, Inc. Exclusive

Modeling Agreement No. 2, ¶ 5), the terms of which prohibited Jackson from performing in a modeling capacity with any company other than Flava Works, and in which Flava Works retained the exclusive right to the use of Jackson's name, image and likeness, through the duration of the contract, September 29, 2009.

14. Sometime in late 2008, BC Productions extended to Jackson an offer of employment whereby Jackson was to perform in a modeling capacity for BC Productions in exchange for payment; however, even though BC Productions was on actual and/or constructive notice that Jackson had been under an exclusive modeling agreement of an undisclosed duration with Flava Works as of the spring and/or summer of 2008, neither BC Productions nor Jones, nor Williams, contacted Flava Works with regard to the status of any exclusivity agreement, choosing instead to induce Jackson to breach the Jackson/Flava Works contract.

15. In early to mid-December 2008, Flava Works learned of the agreement between Jackson and BC Productions.

16. In early to mid-December 2008, Richard Cooper (hereinafter "Cooper"), an agent of Flava Works, spoke with Williams by telephone and informed him that Jackson was under an exclusive contract with Flava Works and that Jackson was not permitted to perform in a modeling capacity for BC Productions. See Exhibit E attached hereto, Affidavit of Richard Cooper.

17. On December 18, 2008, Cooper and Jones exchanged a series of emails in which the existence of the exclusive contract that Jackson had signed with Flava Works was discussed; a copy of the Jackson/Flava Works contract was sent to Jones as an attachment during this exchange. See Exhibit F attached hereto, Email Correspondence.

18. On December 18, 2008, despite having actual knowledge of the Jackson/Flava Works contract, BC Productions shot material for inclusion into its DVD titled "Guess Who's Cummin' To Dinner" (hereinafter "Guess Who") (see Exhibit G attached hereto, Front/Back covers of Guess Who DVD and 18 U.S.C. § 2257 compliance statement); thereby interfering with the contractual relations that had been established in the Jackson/Flava Works contract.

19. On January 22, 2009, Kelly Cartwright (hereinafter "Cartwright"), an attorney retained by Flava Works, sent a letter to Jones informing him of the Jackson/Flava Works contract and attaching a copy thereto, informing him of BC Productions' potential liability for tortious interference with Flava Works' contractual relations and requesting written assurances that BC Productions would no longer interfere with, or otherwise facilitate, Flava Works' exclusive models breaching their respective agreements with Flava Works. See Exhibit H attached hereto, January 22, 2009 letter.

20. On January 25, 2009, BC Productions issued a press release on Xbiz.com announcing the upcoming release of Guess Who, indicating that BC Productions would be accepting pre-orders for the DVD. See Exhibit I attached hereto, "BlatinoPro Offering Pre-Order Sale for 'Guess Who's Cummin to Dinner.'"

21. On January 27, 2009, Jones subsequently replied with a letter in which he indicated that Jackson had told him that Jackson was not under any exclusive agreement with any company and that Jones had only become aware of the exclusivity agreement after material for Guess Who had been shot, which he claimed was one week prior to his receiving notification of the exclusivity agreement. See Exhibit J attached hereto, Letter from BC Productions.

22. On January 27, 2009, Cartwright sent Jones a second letter (see Exhibit K attached hereto, January 27, 2009 letter), acknowledging the receipt of his response, informing him that

5

Jackson was under contract with Flava Works until October 2009, that the release of any DVD containing footage of Jackson before October 2009 would subject BC Productions to liability for tortious interference with the Jackson/Flava Works contract and urging Jones to consult an attorney regarding the same.

23. In March 2009, BC Productions made Guess Who, in which Jackson is credited as "Cobra," available for purchase and/or rental as a hard copy DVD at physical retail locations throughout the country, including in Illinois (see Exhibit L attached hereto, Flava Works Customer Contact List) and through the BC Productions' owned website BlatinoPro.com (see Exhibit M attached hereto, Screenshot of BlatinoPro.com's Inventory/Sales Page), which is accessible in Illinois.

24. BC Productions subsequently made individual scenes from Guess Who available to consumers by video on demand (i.e. pay per minute) (hereinafter "VOD") on third party websites, where the star of the film was referred to both as "Elmo Jackson" and as "Cobra," such as AEBN.com, MovieMonster.com and NakedSword.com (see Exhibits N, O and P attached hereto, Screenshots of VOD Pages for AEBN.com, MovieMonster.com and NakedSword.com), all of which are accessible in Illinois.

### Count 1 – Tortious Interference with Contractual Relations

25. Plaintiff, Flava Works, re-alleges, adopts and incorporates by reference all preceding rhetorical paragraphs.

26. To establish a cause of action for the tort of intentional interference with contractual relations, Illinois law requires that the following elements must be proven: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of

the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages.

27. A valid and enforceable contract existed between Flava Works and William Ratliff, Jr. (aka "Elmo Jackson") in the form of the Jackson/Flava Works contract.

28. BC Productions had actual and/or constructive knowledge of the Jackson/Flava Works contract by virtue of its membership to the List (through which it received Jackson's exclusive model card), Flava Works' press release on Xbiz.com in which Jackson was named as an exclusive model and through email and telephone correspondence with Flava Works and/or its agents.

29. BC Productions intentionally and unjustifiably induced Jackson to breach the Jackson/Flava Works contract by improperly offering to employ Jackson to perform as a model, and by subsequently filming said performance, in Guess Who while it had full knowledge of a valid exclusive model contract with Flava Works.

30. BC Productions' wrongful conduct caused Jackson to breach his contract with Flava Works by performing in a modeling capacity for a company other than Flava Works and by allowing a company other than Flava Works to use his image and likeness, a proprietary right which was solely owned by Flava Works for the duration of the Jackson/Flava Works contract.

31. As a result of BC Productions' impropriety of employing Jackson, filming Jackson's performance for Guess Who, and by subsequently releasing said performance on DVD and over the internet before Jackson's contract with Flava Works was set to expire, Flava Works was unable to fully realize profits to be made through use of the image and likeness of its exclusive model, Jackson, and has suffered damages, the amount of which shall be determined at trial.

### Count 2 – Misappropriation

32. Plaintiff, Flava Works, re-alleges, adopts and incorporates by reference all preceding rhetorical paragraphs.

33. The doctrine of misappropriation is recognized in Illinois.

34. Due to the nature of the exclusivity agreement signed by Jackson, which gave Flava Works the sole right to use Jackson's name, image and likeness for the duration of the contract, Flava Works acquired a proprietary interest in Jackson's name, image and likeness until October 2009.

35. The value and marketability of Jackson's name, image and likeness were the result of the organization and of the expenditure of labor, skill, and money invested by Flava Works.

36. BC Productions, by releasing a DVD in which Jackson performed, and by making footage available through its website and by VOD, used Jackson's image and likeness, without license or permission, while he was still under exclusive contract, thereby appropriating it and selling it as its own; thus realizing profits, from both the sale of the DVD and its availability through VOD, to which it is not entitled, the amount of which shall be determined at trial.

### Count 3 – Violation of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS § 505/2)

37. Plaintiff, Flava Works, re-alleges, adopts and incorporates by reference all preceding rhetorical paragraphs.

38. In Illinois, unfair methods of competition, such as misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, in the conduct of any trade or

8

commerce are unlawful whether any person has in fact been misled, deceived or damaged thereby. See 815 ILCS § 505/2.

39. BC Productions, by using Jackson's image and likeness in and on its products, misrepresented that it had the right to use Jackson's image and likeness and it omitted the fact that Flava Works was the sole and true owner of that proprietary right, thereby deceiving consumers and realizing profit as a result of its misconduct.

40. BC Productions' acts described above have caused irreparable injury to Flava Works' good will and reputation and, unless enjoined by this court, will cause further irreparable injury, for which Flava Works has no adequate remedy at law.

**Count 4 – Violation of the Uniform Deceptive Trade Practices Act (815 ILCS § 510/2)**

41. Plaintiff, Flava Works, re-alleges, adopts and incorporates by reference all preceding rhetorical paragraphs.

42. Under Illinois law, deceptive trade practices occur when, in the course of its business, a business: causes likelihood of confusion or of misunderstanding as to the source, sponsorship, or approval of goods; causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with another; represents that goods have sponsorship, approval, or characteristics that they do not have. See 815 ILCS § 510/2.

43. Through its actions, BC Productions caused, is causing or is likely to cause, a likelihood of confusion among consumers as to the source of Guess Who and facilitated misunderstanding as to Flava Works' sponsorship and/or approval, or rather lack thereof, of Guess Who by implying an affiliation, connection or association between Flava Works and BC Productions through use of Jackson's image and likeness.

44. BC Productions' acts described above have caused irreparable injury to Flava Works' good will and reputation and, unless enjoined by this court, will cause further irreparable injury, for which Flava Works has no adequate remedy at law.

### Count 5 – False Designation of Origin

45. Plaintiff, Flava Works, re-alleges, adopts and incorporates by reference all preceding rhetorical paragraphs.

46. BC Productions' use of Jackson's image and likeness has caused, is causing or is likely to cause, confusion, mistake or deception among the relevant trade and public as to the existence of an affiliation, connection or association between Flava Works and BC Productions as to the origin, sponsorship or approval of BC Productions' goods.

47. By engaging in the activities above, BC Productions has made and is making false, deceptive and misleading representations and false advertising in connection with goods sold in interstate commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

48. BC Productions' acts described above have caused irreparable injury to Flava Works' good will and reputation and, unless enjoined by this court, will cause further irreparable injury, for which Flava Works has no adequate remedy at law or, in the alternative, as a result of the injury suffered by Flava Works' business from BC Productions' actions, Flava Works is entitled to recover statutory damages in an amount equal to threefold the actual damages, which shall be determined at trial, and costs of this action, including reasonable attorney's fees.

### Count 6 – Violation of RICO Statute

49. Plaintiff, Flava Works, re-alleges, adopts and incorporates by reference all preceding rhetorical paragraphs.

50. Upon information and belief, BC Productions' actions alleged herein are a continuous pattern of criminal activity constituting mail fraud (see 18 U.S.C. § 1341) under the RICO statute, 18 U.S.C. §§1961-1968. As a result of the injury suffered by Flava Works' business from BC Productions' actions, Flava Works is entitled to recover statutory damages in an amount equal to threefold the actual damages, which shall be determined at trial, and costs of this action, including reasonable attorney's fees.

**WHEREFORE**, the Plaintiff, Flava Works, Inc. respectfully requests that this Honorable Court enter a judgment in its favor and against the Defendant, Marvin Jones, d/b/a BC Productions, d/b/a BlatinoPro.com, d/b/a ChocolateCreamFactory.com:

1. For a temporary restraining order, preliminary injunction, and permanent injunction against BC Productions, their officers, agents, servants, representatives, employees, attorneys, parents, subsidiaries, related companies, partners, successors, predecessors, assigns, and all persons acting for, with, by, through, or under them and each of them:

   a. Restraining them from selling, and/or making available to rent, any DVD, whether at a physical location in Illinois or through a website made accessible in Illinois, which contains a depiction or performance of William Ratliff, Jr. (aka "Elmo Jackson") that was produced while the Jackson/Flava Works exclusivity contract was still in effect (i.e. through September 30, 2009);

   b. Restraining them from making accessible in Illinois, through their website, ChocolateCreamFactory.com, or any affiliate website, any depictions or performances, including pictures, photographs, jpegs, mpegs, avi files or any other type of visual or audio media, whether made available by download, streaming or in any other fashion, that has been culled from any works referenced in subsection "a.";

    c. Restraining them from tortiously interfering with any of Flava Works, Inc.'s exclusive model contracts in the future;

  2. For any applicable statutory damages;

  3. For punitive damages;

  4. For disgorgement of all gains, profits and advantages derived by BC Productions from their acts of tortious interference, misappropriation, fraud, misrepresentation, deceptive practices and unfair competition and other violations of law;

  5. For monetary damages according to proof at trial sustained by Flava Works, Inc. as a result of BC Productions' unlawful acts alleged herein;

  6. For treble damages;

  7. For all costs and expenses, including, without limitation, reasonable attorney's fees incurred by Flava Works, Inc. in this action;

  8. For prejudgment interest at the maximum legal rate; and

  9. For such other and further relief as the court deems just and proper.

**Jury Demand**: Plaintiff, Flava Works, Inc., hereby demands a jury in any trial that arises from this complaint.

Respectfully Submitted,

Jesse Lanshe (Att. No. 6300294)
In-House Counsel
Flava Works, Inc.
933 W. Irving Pk. Rd., Ste. C
Chicago, IL 60613
305-438-9450
Attorney for the Plaintiff
jesse@flavaworks.com

## Verification

Under penalties as provided by law pursuant to 735 ILCS § 5/1-109, the undersigned certifies that the statements set forth above are true and correct, except for those matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believe the same to be true.

*Phillip Bleicher*

Phillip Bleicher

State of Illinois, County of Cook

*[signature]*

Signature of Phillip Bleicher

Sworn to and subscribed before me this 22 day of December, 2009.

*[signature]*

Signature and Seal of Notary Public

"OFFICIAL SEAL"
Paul M. Dudley
Notary Public, State of Illinois
Cook County
My Commission Expires July 21, 2012

Paul Dudley

Name of Notary Public (typed, printed or stamped)

Check one: ____ Personally Known

✓ Produced ID

GA Drivers License

Type of Identification Produced